U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 06-01512

ORDER OVERRULING DEBTORS' OBJECTION TO CLAIM

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**09/12/2006**



_____
US Bankruptcy Court Judge
District of South Carolina

Entered: 09/14/2006

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 06-01512-DD |
| David Pricer Spencer and Patricia Kiggins Spencer, | Chapter 11 |
| Debtor(s). | **ORDER OVERRULING DEBTOR'S OBJECTION TO CLAIM** |

THIS MATTER is before the Court on David Pricer Spencer's and Patricia Kiggins Spencer's ("Debtors") Objection to Proof of Claim ("Objection") filed by Countrywide Home Loans, Inc ("Countrywide"). Both Countrywide and Debtors attended the hearing held on the Objection on August 17, 2006. Debtors do not dispute that they received funds from Countrywide, used the funds for their benefit, and that they are indebted to Countrywide for the amount borrowed. Debtors contend that (a) Mr. Spencer did not recognize the "HOME EQUITY CREDITLINE AGREEMENT AND DISCLOSURE STATEMENT" ("Disclosure Statement") as a promissory note, and (b) the mortgage was improperly executed and, as a result, the claim should be allowed as a general unsecured claim instead of a secured claim. The issues before the court are (1) whether the Disclosure Statement is a promise to pay, (2) whether an improperly witnessed mortgage is valid between the mortgagor and mortgagee, and (3) whether a recorded mortgage, appearing valid on its face, is effective against a *bona fide* purchaser and, thus, the Debtors in Possession.

*Findings of Fact*

1. Debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code on April 13, 2006 and the Debtors remain in possession.

2. Countrywide filed a claim dated May 4, 2006 on or about May 15, 2006 in the amount of $106,093.95 noting a payment arrearage of $4,178.95. Countrywide asserts that it holds a secured claim by virtue of its mortgage lien on Debtors home. Countrywide mistakenly attached to its claim a copy of the Adjustable

    Rate Note made between Decision One Mortgage and Debtors in the amount of $557,300.00.

3. Debtors filed an Objection to Countrywide's proof of claim on or about June 18, 2006.

4. Countrywide filed an Amended Proof of Claim, on or about July 24, 2006, attaching a copy of the "Home Equity Credit Line Agreement and Disclosure Statement" in the amount of $101,915.00, dated February 8, 2005 between Countrywide Home Loans, Inc., and Debtor David P. Spencer.

5. Mr. Spencer is a real estate agent by profession.

6. Mr. Spencer admits that the signature on the Disclosure Statement is his signature.

7. Debtors admit that they signed the mortgage as borrowers.

8. Countrywide admits that the mortgage was improperly witnessed based on the closing attorney's testimony that Kim Miller, who signed as a witness, signed the document at the attorney's office and did not witness the execution of the documents by Debtors.

9. Debtors admit that they received and used the loan proceeds from Countrywide in the amount evidenced by the Disclosure Statement.

10. Mr. and Mrs. Spencer testified at trial. Mr. and Mrs. Spencer are seemingly well educated, were coherent in their testimony and appear to possess above average intelligence.

### The Parties' Contentions

Debtors contend (1) that Mr. Spencer did not know that the Disclosure Statement was a promissory note, (2) that they believed the loan to be personal (i.e. unsecured) in nature and did not understand that the Home Equity Line of Credit ("HELOC") loan would require an encumbrance of their home, and (3) that the loan documents were not properly witnessed. The debtors seek a determination that the Countrywide claim is a general unsecured claim. Countrywide contends (i) that the note and mortgage speak for themselves and clearly indicate the documents' effects and the secured nature of the loan, (ii) that the Debtors voluntarily signed the documents and used the proceeds for their

personal use, and (iii) that the documents are valid between the parties and valid for purposes of the South Carolina recording statutes.

## Conclusions of law

A signed and filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f); *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991) quoting 3 Lawrence P. King, *Collier on Bankruptcy* §502.02, at 502-22 (15th ed. 1991). Once an objection is raised, the objector bears the burden of going forward to produce evidence sufficient to negate the *prima facie* validity of the filed claim. *In re Allegheny Intern, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992). If the objector produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by a preponderance of evidence that the claim deserves to share in the distribution of the Debtors' assets. *Id*. at 174; *Holm*, 931 F2d at 623; 3 Lawrence P. King, *Collier on Bankruptcy*, § 502.02 at 502-22 (15th ed. 1993).

*I. Unilateral Mistake of Fact and Execution of Documents*

Debtors' first contention is that since Mr. Spencer did not recognize the Disclosure Statement as a promissory note the transaction is not valid. Mr. Spencer testified that he is a real estate agent and fairly experienced with South Carolina real estate transactions, including mortgages and notes. He testified that it was his understanding that mortgages are signed in conjunction with a note, which evidences the loan amount and the terms of repayment. He asserts that there is no promissory note for this transaction. The "HOME EQUITY CREDITLINE AGREEMENT AND DISCLOSURE STATEMENT," is a promissory note. It contains the borrower's promise to pay the lender. Mr. Spencer admits that the signature affixed to the Disclosure

3

Statement is his own. The document provides: "I promise to pay to your order, when and as due, all loans made under this Agreement. . . ." Mr. Spencer is bound by his promise to pay. South Carolina Law provides:

> Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it. One cannot complain of fraud and misrepresentation in the contents of a document if the truth could have been ascertained by reading it. This rule is subject to the exception that if the party is ignorant and unwary, his failure to read the document may be excused. This exception is, however, very strictly interpreted by the court. In determining whether a party can be classified as ignorant and unwary, an individual's education, business experience and intelligence are all considered.

*Burwell v. South Carolina Nat'l Bank*, 288 S.C. 34 (S.C. 1986). *See also Regions Bank v. Schmauch*, 354 S.C. 648, 663 (S.C. Ct. App. 2003)("A person signing a document is responsible for reading the document and making sure of its contents"). *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) *Citing Corbett v. Bonney*, 202 Va. 933, 938, 121 S.E.2d 476 (1961)("[A] party signing a written contract has a duty 'to inform himself of its contents before executing it, . . . and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it'").

The Supreme Court of Washington held similarly in *Skagit State Bank v. Rasmussen* when it stated,

> A party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or is ignorant of its contents. One cannot, in the absence of fraud, deceit or coercion be heard to repudiate his own signature voluntarily and knowingly fixed to an instrument whose contents he is in law bound to understand. Where the plaintiff is a person of ordinary understanding and one with more than ordinary experience in land transactions and instruments of conveyance and security, and with time and opportunity both to consult with an attorney and to inspect the instruments before signing, he cannot be heard in law to repudiate his signature. The whole panoply of contract law rests on the principle that one is bound by the contract which he voluntarily and knowingly signs.

4

*Skagit State Bank v. Rasmussen*, 109 Wn.2d 377 (Wash. 1987)

There is no allegation or evidence of fraud or overreaching in regards to the actual signing of the documents,[1] The debtors' contention that the claim should be allowed as a general unsecured claim belies any suggestion that Mr. Spencer did not make a promise to repay the funds he borrowed. He made that promise in a signed and dated writing. Additionally, Mr. Spencer and his wife admit to signing the mortgage document. It states, in relevant part,

> THIS MORTGAGE dated FEBUARY 8, 2005, is between DAVID P SPENCER, AND PARTRICIA K. SPENCER AS JOINT TENANTS WITH RIGHT OF SUVIVORSHIP…. MORTGAGED PREMISES: In Consideration of the loan hereafter described, [Debtors] hereby mortgage, grant, and convey to MERS and to the successors and assigns of MERS, the premises located at 33 WILLOW OAK RD W, HILTON HEAD ISLAND, BEAUFORT, SOUTH CAROLINA 29928-4408.

Debtors' Exhibit #1.

Mr. Spencer may have believed at some point in the process that Countrywide would extend credit to him on an unsecured basis. However, the nature of a home equity loan is secured. Mr. and Mrs. Spencer knew, by signing the mortgage, that they were pledging their home as collateral for the loan. Thus, at the time of executing the documents, Mr. and Mrs. Spencer knew they were entering into a lending arrangement with their home as security. Additionally, Mr. and Mrs. Spencer did not rescind the transaction during the three day period following execution of the loan documents as they might have under Regulation Z of the Truth in Lending Act.

---

[1] Mr. Spencer makes allegations of fraud in regards to the witnessing of the mortgage. He does not otherwise allege fraud or that he was fraudulently induced to sign the documents.

5

*II. Improperly Witnessed Mortgage*

The next inquiry is whether the mortgage was improperly witnessed and if so, to what effect? S.C. Code Ann. § 30-5-30, states in relevant part,

> (B) A deed or other instrument must be signed by the grantor, mortgagor, vendor, or lessor and the signing must be acknowledged by the grantor, mortgagor, vendor, or lessor in the presence of two witnesses, taken before some officer within this State competent to administer an oath.

S.C. Code Ann. § 30-5-30.

The mortgage was not properly witnessed. The closing attorney testified that execution of the document took place in the Spencers' home and that Mr. Spencer did not want to ask any of his neighbors to witness the documents because it was too early in the morning. Whether this is true or not, it is clear that two witnesses were not present. The attorney had his assistant "witness" the documents when he returned to his office. She did not observe either of the Debtors sign the mortgage or any other document. The requirement for witnesses to a mortgage does not end the inquiry.

*III. Effect of improperly witnessed Mortgage*

   *A. Effect as to the parties to the instrument*

An improperly witnessed mortgage or even a mortgage without witnesses is not void as between the parties. In an unpublished opinion Chief Judge Waites of this Court addressed a similar issue. In *In re Robison* a creditor perfected its security interest by recording a mortgage against the debtors' primary residence four (4) days after the bankruptcy petition was filed. The debtors argued that because the recordation was post-petition and in violation of the automatic stay that the creditor's claim should not be allowed as secured. The Court, while finding the creditor in willful violation of the automatic stay, based its decision on the purpose of the recording statute, and reasoned

6

that the failure to properly record the mortgage might affect third parties but had no effect on the agreement between the parties to the mortgage. The Court stated,

> There is no question that the post-petition recordation of the subject mortgage as a means of perfecting it as to third parties pursuant to the state recording statute was void. However, the fact that the recordation of the mortgage on August 21, 2001 was of no legal effect, does not automatically avoid the underlying secured debt granted by Debtors pursuant to the loan documents and mortgage to First Family Financial Services, Inc. on which the secured claim is based.
>
> In fact, "[a]s between [the mortgagor and the mortgagee], it is not necessary to the validity of any instrument contemplated by said act that it be recorded. Recording becomes material only when there are double conveyances, etc., by the same person." (*Citations omitted*); *See also Leasing Enter., Inc. v. Livingston,* 363 S.E.2d 410,412 (S.C. Ct. App. 1987) (noting that despite the fact that a deed containing the signature of only one witness could not be recorded in county in which property was located, "a deed or mortgage without competent or sufficient witnesses is good as between the parties."). Even though the improper recordation of the mortgage in violation of the automatic stay causes the recordation to be void, state law indicates that the recording statute is aimed at protecting third parties who rely on the public record. *See* Dunes Hotel Assoc. v. Hyatt (In re Dunes Hotel Assoc.), 194 B.R. 967 (Bankr. D.S.C. 1995) (citing Burnett v. Holliday Bros., Inc., 305 S.E. 2d 238,240 (S.C. 1983)) ("It is generally recognized that the purpose of the South Carolina recording statute is to provide notice and to protect parties with subsequent interest in property."). Thus, the voiding of the recordation does not also void the secured nature of the obligation itself as between Debtors and First Family Financial Services, Inc. In order for Debtors to attack the underlying obligation and treat it as unsecured, Debtors must assert a standing as a hypothetical lien creditor or a *bona fide* purchaser pursuant to 11 U.S.C. § 544.

*In re Robison*, C/A No. 00-07173-JW (Bankr. D.S.C. 4/26/2001).

Similarly the Court Of Appeals Of Missouri for the Eastern District, Division Three states,

> [A]cknowledgment is not a pre-requisite to the validity of a deed or to a valid transfer of title from grantor to grantee. The purpose of acknowledgment is to admit the instrument to record and to protect creditors and subsequent purchasers. Where the formal acknowledgment is defective or irregular the instrument is not invalidated as between the parties or persons having actual notice of the deed. The recordation of the unacknowledged instrument is a nullity and will not provide constructive

7

> notice to any subsequent purchaser. Therefore, only those standing in the position of purchasers for value without notice can take advantage of a defective acknowledgment.

*Jamieson v. Jamieson*, 912 S.W.2d 602 (Mo. Ct. App. 1995). *See also In re Bearhouse, Inc.*, 99 B.R. 926, 927 (Bankr. D. Ark. 1989) ("Under well-settled Arkansas law, an unrecorded mortgage is good between the parties …"); *In re Casbeer*, 793 F.2d 1436 (5th Cir. 1986)("[A] deed of trust is void as to a creditor or subsequent purchaser not a party to the instrument if the deed has not been recorded under Tex. Prop. Code Ann. §13.001"); *Associates Financial Services Co. v. Bennett*, 611 So. 2d 973 (Miss. 1992) ("It is well settled by the case law in this state that a defective acknowledgment has no effect on the validity of the deed as between the parties"). *Rogers v. Great American Federal Sav. & Loan Ass'n*, 304 Ark. 143 (Ark. 1990)("The eligibility of a mortgage for recording is irrelevant to its validity as between the parties to it"); *Woolridge v. La Crosse Lumber Co.*, 291 Mo. 239 (Mo. 1921)("An acknowledgment before a trustee or other party interested in a deed is a nullity. But this does not mean that the deed of trust itself is a nullity. It is valid as between the parties and those having actual notice, and this is true even if the formalities of an acknowledgment had not been attempted").

South Carolina follows the majority rule that a defective acknowledgement does not void a mortgage as between the parties. The mortgage is enforceable between the Debtors and Countrywide.

### B. Effect as to a Bona fide Purchaser

Pursuant to 11 U.S.C. §1107 chapter 11 debtors in possession wield the same avoidance and strong-arm powers as do trustees. As mentioned in *In re Robison*, Countrywide's failure to witness the mortgage properly does not "void the secured nature of the obligation itself as between [the parties]. In order for Debtors to successfully

8

attack the lien and for the court to treat the obligation as unsecured, Debtors must assert standing as a hypothetical lien creditor or a *bona fide* purchaser pursuant to 11 U.S.C.§ 544." *In re Robison,* C/A No. 00-07173-JW (Bankr. D.S.C. 4/26/2001).

Debtors in Possession have the power of a trustee, and a trustee has authority to avoid transfers of property of the debtor under state law by virtue of 11 U.S.C. § 544. To prevail under § 544, the Debtors must show that under state law a *bona fide* purchaser would prevail against Countrywide's mortgage interest. *See Greenville Plaza Investors Ltd. Pshp. v. Corporate Real Estate Serv. (In re Greenville Plaza Investors Ltd. Pshp.)*, 1998 U.S. App. LEXIS 9447 (4th Cir. 1998)("The extent of the trustee's strong-arm powers is defined by the law of the state where the property is located"). The Court of Appeals for the Fourth Circuit has determined that "[a]lthough a trustee's actual knowledge will not preclude *bona fide* status, constructive notice, as determined by state law, will defeat the trustee's rights under 11 U.S.C.S. § 544(a)(3) just as such notice would defeat the rights of any *bona fide* purchaser of real property." *Satterfield v. Sigmon (In re Mahaffey)*, 1996 U.S. App. LEXIS 16419 (4th Cir. 1996).

Under South Carolina law "when an instrument bearing a certificate of acknowledgment or proof which is regular on its face is presented to the recording officer, it becomes his duty to record it, and its record operates as constructive notice to third persons, notwithstanding there may be a hidden defect in the acknowledgment." *Franklin Sav. & Loan Co. v. Riddle*, 216 S.C. 367, 371 (S.C. 1950). *See also Stockmen's Nat'l Bank v. Lukis Candy Co.*, 47 Wyo. 127, 136 (Wyo. 1934)(The disqualification of a witness based on his interest, which did not appear on the face of the document was entitled to be recorded and acted as constructive notice); *In re Bearhouse, Inc.*, 99 B.R. 926, 927 (Bankr. D. Ark. 1989)("If the clerk is under a duty to record an acknowledged

instrument that is regular on its face, the recording must constitute constructive notice to third parties if the concept of constructive notice is to have any practical application"); *In re Casbeer*, 793 F.2d 1436 (5th Cir. 1986)("Where the defect in an acknowledgment does not appear on the face of the certificate, a record of the instrument is effectual as constructive notice…").

In the present case the closing attorney's assistant signed the mortgage as a witness at the attorney's office subsequent to the closing. The witness appeared before the notary public and acknowledged the instrument at this later time. The defective acknowledgment is latent. One cannot discern from the face of the document that there is a defect. The documents were properly recorded. Under South Carolina law the recording of the documents is constructive notice to all. A *bona fide* purchaser is subject to this constructive notice and can not defeat Countrywide's mortgage lien. The Debtors in Possession cannot defeat the lien.

## **Conclusion**

The Debtors testified that the signatures on the documents are theirs. Mr. Spencer admits receipt of the money, use of the money, and his indebtedness to Countrywide. The mortgage and note forms are not confusing and do what they purport. The fact that the note and mortgage were not properly witnessed does not absolve Mr. Spencer of liability for the loan. Mr. Spencer knew he was borrowing money and he promised to repay the money in a signed writing. Furthermore, since the defect in witnessing the loan documents was latent, the recording of the documents gives constructive notice to all and defeats subsequent claims of a *bona fide* purchaser, and, in the present case, the debtors in possession. It is therefore,

**ORDERED** that the Debtors' objection to the amended claim filed by Countrywide is hereby OVERRULED, and the amended claim is allowed as filed.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
September 12, 2006